Arguments not to exceed 15 minutes per side. Mr. Therese for the appellant. Your Honors, I have the privilege to present to the courts Samantha Kirby, a student from the University of Michigan's Law School Federal Appellate Litigation Clinic. We have previously moved the court for her permission to present. With your permission to argue this morning, I yield all my time to her. Thank you. Ms. Kirby. Good morning, and may it please the Court. Samantha Kirby for the appellant, Mr. Frederick Grumbley. Your Honors, the Michigan Court of Appeals unreasonably applied Strickland v. Washington in finding trial counsel was effective. Trial counsel was plainly ineffective in failing to move to suppress evidence found in violation of the Fourth Amendment. Whereas here a Sixth Amendment claim is founded on an underlying Fourth Amendment claim, the defendant must also prove that the Fourth Amendment claim is both meritorious and outcome determinative. Here it is both. However, when the Michigan Court of Appeals analyzed the underlying Fourth Amendment issue, completely failed to analyze whether Mr. Grumbley's consent to search was sufficiently attenuated from his illegal arrest. This failure is clearly an unreasonable application of the Supreme Court's Fourth Amendment jurisprudence under Wong-Sun and Brown v. Illinois. Your opposing counsel in their brief don't appear to contest that. They just contest whether the initial entrance was consented to or not. Is that correct? That's correct, Your Honor. The state has never denied that there is no attenuation here. Further, the state's theory that there is somehow consent to enter the home in this case is meritless. It's a new theory. Could I ask a preliminary question just to narrow the issues? Let's assume, contrary to the argument you were just about to go on, that there was consent to enter the house. I understand you say that there's not. But let's assume for the moment, changing one fact, that there was consent to enter the house. Does that eliminate all of your arguments then? Yes, Your Honor, because— It does, right? So all we're concerned about then is whether there's consent to enter the house, right? That's correct. The key issue here is the legality of the arrest, which the state court was further unreasonable in deciding that it need not determine. The state court essentially took out the most important issue under Payton v. New York and under the Fourth Amendment jurisprudence and determined that it need not decide whether or not the arrest was illegal. Further, the arrest was plainly illegal because there was no consent to enter, and the arrest clearly occurred within the home, even though the state contends that on the record it was unable to find that. The state appellate court, if I'm correct, and this is a confusing case to me, so both counsel are going to have to help me straighten it out procedurally, because there's different stages of the analysis. But if the issue comes down to whether there was consent to enter the house, the court of appeals does not appear to have resolved that. Is that correct? That's correct, Your Honor. The court of appeals didn't address consent to enter. Because they went off on another issue that the state no longer defends. Correct. Yeah, the court of appeals— Who should have raised that first? You should have, right? There was no consent to enter? Enter the house. Now, I'm not talking about consent to search after you've been arrested. I'm talking about consent to enter the house before you get arrested. Those are two different issues, right? Your Honor, on this record, there is absolutely no argument, especially no reasonable argument, that there was consent to enter. All Mr. Grumbly said when he saw the— that there's consent or not consent to enter. Who's responsible for doing that? Your Honor, we must prove that the arrest was illegal in order to win on the Fourth Amendment. So you've got to show that there was no consent to enter. Correct. And, Your Honor, there was no consent to enter. All Mr. Grumbly said was, three times, you're out. All he did was acknowledge that there was police standing at his door. But this is having us decide it for the first time, it never having been decided by the lower courts or by the state court. The state court didn't even concern itself with the idea that there was consent to enter because there's absolutely nothing in the record that would indicate this. The state has raised this argument on its briefing at this stage never once before, and the state court did not rely on that theory or even consider it because there's literally nothing in the record that would merit that. So your contention is that the state is making that argument for the first time now and cannot rely on it, you would say, because it's fact-intensive and they've never raised it before. They cannot rely on it because at its very bottom, it's completely meritless. You want to argue the merits of those facts when we have no testimony, we have no elaboration or no evaluation of credibility, and we have a court of appeals determination that they don't know the answer to that factual issue. It seems a little strange for us to try to resolve it now on appeal. Your Honor, we contend that there is no factual issue that you need to resolve because this theory is completely baseless. But if there's no factual record there, how do we get to that issue at this point? It seems to me that there is sort of an underpinning missing here for us to jump in and decide that issue. Your Honor, under Wiggins, this court may review de novo issues that the state court did not reach in its determination. So were this court to decide that the consent to enter issue is something it would like to address in its opinion, it may review that de novo under Wiggins. What's the review? I mean, who are we going to? We don't know whether they entered or not. Whether the police entered? Whether the police entered without permission or not. The district court? The court, the Michigan Court of Appeals, says they can't tell whether he was arrested first inside the house or outside of the house. If he was arrested outside of the house, you'd have no argument today, right? That's correct. They say we can't tell. So now we, on appellate review, of habeas review, of what the court of appeals said there's no evidence of one way or the other, we're supposed to decide which way? That seems strange. First, Your Honor, I'd like to point out there is abundant evidence in the record that the arrest occurred within the home by the officers themselves. On page 213, Sergeant Garibelli says, as soon as we walked into that residence and we got him secured. Detective May on page 475 says, we knocked on the door, we identified ourselves, and asked for Frederick Grumbly. We went in. The fact that the state court determined that it could not find on this record that the arrest occurred. What stage of the proceedings are those statements? One was in the second preliminary examination, and there's plenty at trial as well to indicate the same. So the fact that the state court did not find on this record that the arrest occurred inside is essentially an unreasonable determination of the facts as well. Let me ask you this. In my own mind, I'm satisfied that the arrest occurred inside. There was one of the officers that said, I was the last one in, and when I got in there. We went in, I was the last one in, and when we got in, they had him in the chair handcuffed, and they had arrested him. But even if that's the case, it doesn't clear up whether he consented to them coming in or not. It would be if they went in without consent and arrested him in the house without a warrant, without consent, it's an illegal arrest. But if at the door he said, come on in, then it's not. We don't have the answer to that, do we? Isn't that a different question from the question where the arrest took place? You're correct, Your Honor. There's two questions here, where the arrest took place, which is inside the home, and whether Mr. Grumbly gave consent to enter the home, which is no. And it's that second question that the Michigan court didn't even address, isn't it? That's correct. The Michigan court didn't even address that question because it wasn't even raised on this record at all that there could have been consent. Mr. Grumbly said three times, you're out. If that's consent to enter a home, if any acknowledgement of police at your door is consent to enter the home, that effectively obviates the consent and the warrant requirement of the Fourth Amendment and undermines the principal protection of the Fourth Amendment, which is the protection of the home. There's no consent to enter on this record, and there's ample testimony in the record of every step of this arrest. When the police got there, what they said, what he said, and then as soon as they got in, that they got consent to search. There's no question on this record that there's no consent to enter, and this court need not even reach that question because it is not raised by this record in any way. The state here is trying to find anything it can to prevent this court from reaching the attenuation issue, and on the attenuation issue, it is absolutely plain that there was no attenuation. There was no time in between the consent to search and the illegal arrest. There were no intervening circumstances between the two. They've declined to argue that in their brief. That's correct. Your Honor, because there is an illegal arrest here, there was no attenuation, and there was later consent to search. There was a plain Fourth Amendment issue here, and counsel was objectively unreasonable in failing to move to suppress this evidence. All right, let's assume for the sake of argument now that that's true. The problem is that there's several convictions here that have nothing to do with the arrest or anything that came out of the arrest. There's independent evidence of the extortion. There's independent evidence of the attempt to produce sexually abusive materials. So if we knock out felon in possession of child pornography and felony firearm, he's still serving a 24- to 50-year sentence in the state penitentiary. Am I right? Your Honor, he would be resentenced in that case because of the sentencing guidelines. He would have fewer convictions, and he would need to be readdressed. He would have fewer convictions. I know he's in there as a recidivist. I understand that, but putting him in there as a recidivist, doesn't that depend on convictions in the past and not the convictions that he's currently convicted of, or am I wrong? Yes, Your Honor. The sentencing, we believe, would still change, and we would need to have the state reconsider the sentence in light of three fewer convictions. Further, the defendant should not— These were concurrent sentences, though, right? Like in the federal system where they calculate the range based on all of the different crimes. These are independently calculated concurrent sentences. Is that correct? One was concurrent and one was consecutive, Your Honor. Of the 24 years that Judge Daughtry is talking about? Those two were concurrent. Those were concurrent, weren't they? They're concurrent to these that you're challenging. You're not challenging those convictions, are you? No, Your Honor. You're agreeing that the conviction for which he was sentenced to, what is it, 24? 24 to 50. 24 to 50 years stands, is that correct? That's correct. However, the concurrent sentence doctrine does not bar this court's review of this case. I didn't mention that in my question. Can you tell me, and maybe I should ask opposing counsel, what sentence did he get as a felon in possession of a firearm? Do you know that? I believe that was the two years consecutive. The two-year consecutive was the felony firearm. Oh, I'm sorry. The felon in possession was part of the 24 to 50-year range, so that would change that as well. Thank you for clarifying that, Your Honor. Thank you. For these reasons, we submit that habeas should be granted. Thank you, counsel. Would you mind starting where I ended up? I believe to, Your Honor. Let's assume, just for the sake of argument, that this was an illegal arrest, that the lawyer was ineffective for failing to challenge it, that the convictions that arose out of the arrest and the search of the house go out. What happens? Does it require resentencing, and if it does, what happens to these sentences? Assuming all of those things, there are two things that are at issue. One is that his felony firearm, the two-year sentence for felony firearm, was, in fact, consecutive to the other sentence. Right. And so that would have to be thrown out. And also, the prior record variables, which are part of the sentencing guidelines in Michigan, would, I believe, I don't remember which variable it is, but one of them counts all of the convictions that are achieved at the same time. And I haven't looked at the record variable to see if that would change and if that would change his scoring or not. If he ends up, and I don't know to what extent, Your Honors, are familiar with the sentencing guidelines, but there's a grid system, if that changes what cell of the grid he's in, that would. . . It might affect it. It might affect it. So we can't assume that if we knock out felon in possession, the CP and the felony firearm, that he's still got 24 to 50 to serve. Well, he would still have 20. . . He might still have 24 to 50. He might have less. It's not. . . I don't know if it would change. It depends on if it would change his cell. And then at resentencing, he might receive the same sentence depending on the judge. He might. Okay, but would you concede that if we were to do that, I'm not trying to suggest to you that we are, but if we were to do that, we would need to send it back to the trial court in Michigan for resentencing. Well, we'd have to send it back. We'd have to send it back to consider whether resentencing is required because we don't know the prior record variable and whether that changes. . . That just throws out the whole concurrent sentencing doctrine argument, though, and then doesn't it? Well, for that reason. . . That's what you said, two of the years are consecutive? Exactly, Your Honor, and that throws out the concurrent sentencing. And resentencing doesn't mean that the court would necessarily enter a different sentence, but it's still resentencing. Correct. So you're conceding that the concurrent sentencing doctrine doesn't dispose of this case? I am, Your Honor, because of the consecutive sentence. Well, then maybe we should go to the other issue. I have a preliminary question about the other issue, if you don't mind. Of course. I take your brief as arguing that there's no ineffective assistance of counsel because there was consent to entry. I think about. . . I'm sorry. Right? Is that right? Before we get to concurrent sentencing and before we get to whether it was harmless error because there was other evidence of those same crimes, putting those aside on the issue of whether there was ineffective assistance of counsel. I believe that's. . . You are arguing there was consent to entry, and you're declining to argue anything else. Our brief did decline to argue the attenuation argument. We didn't concede it, and I. . . Well, you don't concede it, but if you don't argue it, you concede it, don't you, in this court? I understand that this court takes a dim view of me coming up here on oral argument and trying to argue something that's not. . . Pretty dim, all right. I understand. Because it doesn't give the other chance to the other. Even though they argued it anyway, they might have been better off saying, we're not arguing this because you don't raise it. But you just say, we're going to hang our hat on this one item. Is that correct? That is what our brief said. According to your brief. Yes. And if we go by that, why isn't that an argument that you never raised below? I mean, I couldn't find it. I couldn't find it that you raised it in the. . . In the district court. . . In the habeas petition at all. All you did was rely on the district court. All you did was rely on the state appellate court, and the state appellate court explicitly didn't even say that it was not reaching it. It just didn't reach it at all. Yeah, I mean, it started to discuss it and then said, we don't know what happened. It started to discuss whether it was inside or outside, but doesn't say if it was inside, it was consented entry. That's true. So there's no discussion of whether the entry was consented, which is now your current argument, right? Your current only argument. Is that right? Yes, Your Honor. I mean, unless you're going to allow us to come up on oral argument. Yeah, well, I don't know. It's a criminal case. It's kind of rough. Well, it's a habeas case. I want to back up for you just a little. Okay. Thank you. I think it's admirable in this case not to try to argue attenuation. Well, okay. Whether he argues it or not. Well, I don't feel like I'm being admirable. I feel like I'm kind of foreclosed from doing so. You're stuck. I'm stuck. I would love to argue attenuation. I'm ready to argue it, but I get the distinct sense that this court's not. You know that under the facts of this case, it would be virtually impossible to make out a case of attenuation. I mean, that's where the courts in Michigan fell on their faces. I disagree, Your Honor. I do. I do. I mean, to the extent that Your Honor might be opening the door. No, I'm not. Oh, no. Oh, no. Okay. Then I will back off. Let's leave it. You're not going to argue attenuation. I'll just leave it lie. You're not going to argue attenuation. I'll just leave it lie and say that the state court's attenuation discussion was reasonable. Judge Dautry is suggesting it might lose even if you had argued it. I understand. I understand. But on the argument that you make, I mean, we can treat it de novo, but it seems sort of weird to do that because there's no nothing. In habeas, we're used to deferring. We're used to deferring to this and deferring to that. We're not used to coming up with our own. I'm not. No, I understand. Right? So for me to decide by going back and looking at the pretrial hearing to decide whether there was consent when it's never argued whether there's consent and there's no adjudicator who's looked at witnesses to say whether there's consent for us to say consent now is late, it seems to me the only possible argument you can make is that it was up to them to prove at some point and they didn't do it. But I'm not seeing at what stage they should have done that. Are you with me? Do you see what I'm asking? I absolutely understand what you're asking, Your Honor. And they should have done it. And I think that the answer is that it is the petitioner's burden to show entitlement to habeas relief. They argue Payton. They argue Payton. Absolutely, Your Honor. They argue Payton on direct appeal. But we don't have enough facts here about the entry and what happened. And I think this court needs to turn back to the But no one ever stands up and says there aren't enough facts to do this. They just go on to the alternative argument, which is now undefended. I understand, Your Honor. And I think it's sort of you didn't raise one argument then and you don't raise another argument now. It sort of leaves you in a tough position. It is a tough position. But I also know that the state can't lose on default in a habeas case. And that's the equivalent of, I think, what Your Honor is suggesting here. I think there still has to be a burden. If we aren't to have the effect of losing on default, what's the nature of our order? We can't just affirm it on default either. The nature is that the petitioner hasn't shown that there was not consent to entry. And there just aren't enough facts here. If you look at, I think, Burt was It wasn't ever contested, though. Where was it contested? Where was it argued? You haven't shown that there's consent to enter. There's consent to enter. And here are the facts which show that there was consent to enter. It's never been raised such that you could say, well, show us that there wasn't consent. I mean, it's never raised at all. I understand, Your Honor. But if we had failed to answer the petition altogether, that wouldn't show entitlement to habeas relief. I mean, that's what I'm saying. This is in the nature of a default. It almost sounds like, Your Honor, suggesting that we're in a worse position for having answered the petition as we did than we would be if we had blown off the district court and said we're not answering this because then at least we wouldn't be in line for a default. And that's what I'm saying. Well, if you don't argue it at all, then you have, I mean, I don't know. You don't have to Somebody comes into court. They say, we appeal because our counsel didn't raise a Payton issue, and the Payton issue depends on certain facts being one way rather than the other. And the court says, well, I don't have the facts to conclude that because I'm going off on some wrong issue. I'm not sure it's default exactly for the court to say, you need to argue and provide support for the prong of the issue that you're ultimately going to rely on. I understand, Your Honor. I absolutely understand. And I If that's what we think, then what's the proper action here? Is it just affirmance, or are we supposed to send it back to the district court to have evidence? Are we supposed to send it back to the district court to grant a conditional habeas so that they can grant evidence? Or are we supposed to send it back and have the district court enter a conditional habeas or non-conditional habeas? I don't know. I don't understand what the answer is if you have this kind of failure to argue. I understand, Your Honor. I think the proper disposition is to affirm because the district court If you send it back to the district court, it would be futile because the district court doesn't have any facts to find to show. There's nothing on the record to show. This is a situation like Burt v. Tillow. The district court can't find it, but you want us to find it. No, no, no. We've argued that there was You have to find that there's consent in order to rule for you, right? Respectfully, no, Your Honor. You have to find that the petitioner has failed to show that there was not consent. This is a situation akin to Burt v. Tillow in which the Supreme Court reversed this court in part because this court said, well, there's no facts showing that counsel was effective. And, in fact, the court says, no, this is on its head. You have to show facts that show that the petitioner has to show that counsel was ineffective. The state doesn't have to show that counsel was effective. And that's the case here. We conceitedly, it would have been better if we had argued it more thoroughly, conceitedly. But it is not our burden to show that counsel was effective. It is the petitioner's burden to show that counsel was ineffective. And we just, just like in Burt v. Tillow, we don't have the facts. We know that the only facts we have are the three times you're out, right? And then he's taken into custody inside his home. And I would point this court to United States v. Carter, which was a direct appeal case. It was en banc. And the only fact was when the police officers sought admission to the room, it was a hotel room in that case, the defendant didn't say anything but stepped to the side. And a majority of this court en banc, including Your Honor, Judge Rogers and Judge Daughtry, said that that is enough to show consent to enter. Let me ask this then. Apart from not raising it in the state courts, this wasn't argued in the district court, right, this consent to enter? Correct, Your Honor. So we normally, if the court had ruled against you, you would have to rely on something that you had not presented to the district court. We would normally throw that out because it was waived, right, or forfeited. But you were able to get past that because you won on another issue. And so you can say, please affirm on an alternative ground. Is that right? Yes, Your Honor. But that's discretionary, isn't it? Whether we're going to affirm on an alternative ground, whether it's a habeas corpus or any kind of a case, when we're being asked to affirm not on the ground that the district court relied on, that was argued to it, but being asked to rely on a different ground, one that was not raised to the district court, I think that's probably within our power in certain circumstances. But my understanding is we look at a number of factors to determine whether we do that, right? Yes, Your Honor. So I'm wondering how you address that. I mean, this would seem like if there ever was a case where we shouldn't affirm on an alternative ground, this might be one of them. And, again, I would respectfully disagree, and I would point to the fact that this is a habeas case, and the Supreme Court has noted that in habeas cases there are interests at stake that go beyond the interests of the parties. This is not only a case of the prosecuting authority of the state of Michigan versus Frederick Grumbly, but this is also a case with the state courts and the people of the state of Michigan. And it's also a case where it's not just failure to argue the winning argument in the habeas petition, it's failure to make the basis for the winning argument when it was exhausted before the state courts. So you've sort of got a double failure to argue, which might weigh in some sense against these overarching habeas concerns. I think I would respond to that way and say that what the state argued in state court really should not be a consideration to this court because this case comes to this court as it was brought in from the state court. It undermines the primary tool, shall we say, for deference, which is epideference. I mean, it just undermines the epideference because the district court can't have decided something that wasn't even argued to it. I think that epideference depends not on what the state argued in state court, but on what the state court decided in state court. I know. I mean, there are these cases which say a state court decided something that was argued to it and they said nothing. But that's a little different from the state court decided something, said nothing because it was never argued to them. You don't say that it was argued to them, do you? No, but it was the defendant appellant's job in the state court to make these arguments. They made the arguments. They made the arguments, absolutely, and we're not arguing that anything should be held against them, but nothing should be held against us because we were aptly. And the way we argue a case in state court doesn't affect the deference that needs to be given to the decision. The decision itself affects the deference that is to be given to the decision. Thank you. And I thank Your Honors, and we request affirmance. Other questions? No. No, thank you. Thank you. Oh, Your Honors, I'm sorry. I never placed my appearance on the record. Should I do that right now? I just. I think you're on the record. I'm on the record. All right. I just wanted to make sure there wasn't any problem. Did you file an appearance? Yes, we filed an appearance and an acknowledgment of oral arguments, so hopefully we're. Oh, then you should be okay. Okay, all right. You're just saying you didn't introduce yourself? The questioning started right away and I didn't. Don't worry about it. Say your name. We know your name. Don't worry. Linus Banghardt-Linn for the AG. Thank you, Your Honors. Requesting record.  No. No? It's Banghardt-Linn. Yeah, thank you. Your Honors, first of all, we have sufficiently argued and shown without a doubt here that counsel was ineffective in failing to raise this meritorious Fourth Amendment claim. The fact that the state is now raising a red herring that is completely outside the record, which is this issue of whether or not there was consent to enter, is beside the point. With respect to support that statement, it has to be without doubt that this is a meritorious claim. That's correct, Your Honor. Not exactly without doubt. We don't have the facts to know whether it's meritorious or not. Which facts do you not have? Whether there was a consent at entry. Your Honor, we have all of the facts surrounding the entry of the home. Why don't you say it's uncontested and clear and nobody could argue to the contrary? That's what the whole argument is about, isn't it? Well, Your Honors, the other side has argued that saying three times you're out is consent to entry. They have not argued that Mr. Grumbly stepped aside and let the officer into his home. They have not argued that Mr. Grumbly said, you may come in. They have argued nothing that could in any way be construed as consent to enter a home when the police are standing there. So, Your Honors, we believe that the facts are clear on the base, and one of the reasons why this hasn't come up yet is simply because it is completely outside the record that there might be consent to enter. The fact that the state court was focused on where the arrest occurred and the fact that the state is arguing that there's a whole other theory for why the arrest was illegal, both of those do not conform with the facts in the record. Well, they did argue those other things, though, right? He says now, he says we just don't know, and it's as if we never said anything. The court still has to deny habeas if there's not a sufficient basis for it, and that's the nature of his argument, right? Your Honor, our position is that there is sufficient basis for habeas to be granted here. However, in the alternative, if this court finds there's not sufficient basis, we would ask that this court either grant habeas and send it back for determination about the consent issue or grant a conditional habeas and send it back for determination on the consent issue. But either way, there has been a serious constitutional error in the state court's opinion. That needs to be addressed here, because the state court completely skipped the attenuation analysis, and that cannot stand, and that, with the facts here- that habeas clearly is warranted here for the reasons of the facts and the reasons of the law. Questions? No. Questions? Thank you, counsel. Thank you very much. Appreciate your argument. Thank you. Case will be submitted.